# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS                                                               20-76-SDD-SDJ

BENJAMIN ANTHONY FIELDS

## RULING

     This matter is before the Court on the *Motion for District Court to Review the Order Denying Defendant's Motion to Revisit and Amend Detention Ruling*[1] filed by the Defendant, Benjamin Anthony Fields ("Fields"). The United States ("the Government") filed a *Response*[2] to this *Motion*. The Court held an evidentiary hearing on this *Motion* on August 17, 2021 and took the matter under advisement.[3] The Court has considered the arguments of the Parties, the evidence presented at the hearing, and the law as applied to the facts of this case.  For the reasons set forth below, Fields' *Motion*[4] shall be granted.

## I.      BACKGROUND

     The Court summarized the facts of this case in a prior *Ruling*.[5] Briefly, Fields has been charged with receiving a firearm while under indictment for a felony in violation of 18 U.S.C. 922(n). Fields was arrested on September 17, 2020 after police officers detained the vehicle he was sitting in. During the officers' subsequent search of the surrounding area, they found several firearms hidden under a house. Fields asserted that

---

[1] Rec. Doc. No. 66.
[2] Rec. Doc. No. 79.
[3] Rec. Doc. No. 94.
[4] Rec. Doc. No. 66.
[5] Rec. Doc. No. 82.

the firearms were obtained in violation of the Fourth Amendment and moved to suppress. The Court granted that *Motion* on July 29, 2021.[6] The Government filed a *Notice of Appeal*.[7]

The procedural history of Fields' detention is lengthy. Fields was arrested on October 15, 2020.[8] The Government moved for detention pending trial at Fields' arraignment on October 16, 2020; Fields requested a continuance and the Magistrate Judge ordered him temporarily detained.[9] At the detention hearing on October 23, the Magistrate Judge found that the Government established by a preponderance of the evidence that Fields "is a risk of nonappearance" and that the Government established by "clear and convincing evidence that there were no conditions or combinations of conditions that could reasonably assure the safety of the community."[10] On March 17, 2021, Fields filed a *Motion to Revisit and Amend Detention Ruling*;[11] the Government filed an *Opposition*,[12] and both parties filed *Replies*.[13] On June 11, three days before the hearing on the *Motion to Suppress*, the Magistrate Judge issued an order denying Fields' *Motion to Revisit and Amend Detention Ruling*, finding that Fields had not produced any new and material evidence that warranted reconsideration.[14] On June 25, 2021, Fields filed the instant "*Motion for District Court to Review The Order Denying Defendant's*

---

[6] *Id.*
[7] Rec. Doc. No. 91.
[8] Rec. Doc. No. 8.
[9] Rec. Doc. No. 12.
[10] Rec. Doc. No. 14.
[11] Rec. Doc. No. 42.
[12] Rec. Doc. No. 43.
[13] Rec. Doc. Nos. 47, 52.
[14] Rec. Doc. No. 63.

*Motion to Revisit and Amend Detention Ruling*."[15] The Government's *Opposition*[16] simply referenced its earlier briefs and the Magistrate Judge's *Ruling*.

## II.    LAW AND ANALYSIS

Fields' *Motion* must be addressed in two parts. First, since Fields is seeking review of the Magistrate Judge's *Order* that did not re-open Fields' detention hearing, the Court must determine whether there is new and material evidence that warrants re-opening the hearing. Second, if the Court determines that there is new and material evidence that warrants re-opening the hearing, then the Court will review *de novo* the original detention order.

### A.  New and Material Evidence

After an initial detention determination, a defendant may move to re-open his detention hearing. Review of an initial detention order is warranted:

> [A]t any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Materiality is assessed using the same factors to be considered when determining whether pretrial detention is appropriate. 18 U.S.C. § 3142(g) provides:

> Factors to be considered[:] The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning[:]
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

---

[15] Rec. Doc. No. 65.
[16] Rec. Doc. No. 79.

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including[:]

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and[,]

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Fields proffers six purportedly new and material pieces of evidence that he argues weigh in favor of his pretrial release: (1) a state court lifted its holds on Fields and granted him bond; (2) discovery allegedly shows that the arresting officers lied; (3) this federal prosecution is allegedly discriminatory; (4) the length of Fields' pretrial detention; (5) a third party admitted that he, and not Fields, was the shooter in an attempted murder that Fields has been charged with; and, (6) a new housing possibility for Fields with a second cousin.[17]

The Court concludes that the third party's confession to the attempted murder that Field's has been charged in state court is new and material evidence which warrants a review of the Magistrate Judge's detention order. The Court need not address Fields' remaining arguments. As to the purported confession, the Government argued at the August 17 hearing that it contradicts the statement that the affiant gave to East Baton Rouge Sheriff's Office deputies after the shooting. Moreover, the Government contends

---

[17] Rec. Doc. No. 66-1, p. 4.

that Fields called a third party from jail and directed that third party to tell the affiant to take responsibility for the shooting.[18] Finally, the Government asserts that the affiant, a juvenile, offered the affidavit at the request of an attorney in defense counsels' firm.[19] Fields counters that the affidavit was taken in the juvenile's home, in the presence of his mother, and by defense counsels' investigator.[20]

The Court respectfully disagrees with the Magistrate Judge's *Order* denying Fields' *Motion* to re-open the detention hearing. The Magistrate Judge held that even if the affiant was telling the truth, Fields knew that he was not the shooter at the time of the first hearing, so the affidavit of the confessed shooter is not new and material evidence.[21] The Magistrate Judge cited a Fifth Circuit case, *United States v. Hare*[22] and a Northern District of Oklahoma case, *United States v. Ward*.[23]

In *Hare*, the defendant attempted to offer the testimony of his sister, mother, and friend who would have attested to his record of appearance in prior prosecutions.[24] The Fifth Circuit stated, without explanation, that this was not new evidence. This portion of *Hare* is inapposite insofar as it is focused on the assurance of appearance element and not the community safety element at issue here.

In *Ward*, the defendant argued that he had new knowledge that "certain witnesses were willing to testify at the detention hearing on [the defendant's behalf.]"[25] The proposed testimony was from the defendant's pastor, family, friends, and

---

[18] Rec. Doc. No. 43, p. 4.
[19] *Id*.
[20] Rec. Doc. No. 66-1, p. 5–6.
[21] Rec. Doc. No. 63, p. 3.
[22] 873 F.2d 796 (5th Cir. 1989).
[23] 235 F. Supp. 2d 1183 (N.D. Okla. 2002).
[24] *Hare*, 873 F.2d at 799.
[25] *Ward*, 235 F. Supp. 2d at 1185 (N.D. Okla. 2002).

acquaintances concerning his ties to the community, his opposition to drugs, and his employment history.[26] The court noted this was cumulative of the testimony that the defendant had already offered at the original detention hearing.[27] The court explained that the facts were analogous to a First Circuit case in that the defendant was proposing to offer character evidence and held that this evidence was known to the defendant at the time of the detention hearing, and thus insufficient to warrant re-opening the hearing.[28] The court stated: "[t]he test is whether the *information* was unknown at the time of the hearing, not whether a witness' *willingness to testify* was unknown to the movant."[29]

*Ward* is inapplicable. First, Fields does not propose to offer character evidence; rather, the evidence he proposes to offer is directly relevant to his potential danger to the community. Admittedly, if the affiant is believed, Fields knew that he was not the shooter at the time of the detention hearing. However, he did not know that there was a way for him to present that information to the Court without testifying. Unlike in *Ward*, where the information was known to the defendant and did not require him to testify, in the instant case, while Fields knew the identity of the shooter, the only way he could have conveyed that information was by waiving his rights under the Fifth Amendment. Moreover, the affidavit itself is new and material evidence that was not before the Magistrate Judge at the original hearing. The Government's arguments related to the veracity of the affidavit go to the weight that the Court should give it—not to whether it is new and material. Having concluded that the affidavit is new and material evidence, the Court reviews, *de novo*, the Magistrate Judge's detention order.

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* (emphasis in original)

## B. *De Novo* Review of the Magistrate Judge's Detention Order

"When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release."[30] The Court applies the factors in 18 U.S.C. § 3142(g) to determine whether pretrial detention is appropriate. The plain language of 18 U.S.C. § 3142(g) indicates that pretrial detention is the exception—not the rule. The Government has the burden of proving: by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant or by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community.[31] The Fifth Circuit has emphasized that the statute does not require *guarantees* of the defendant's appearance and community's safety, but rather only *reasonable assurance*.[32]

### 1. The Nature and Circumstances of the Offense Charged

The Court begins with 18 U.S.C. § 3142(g)(1): "the nature and circumstances of the offense charged, including whether the offense is a crime of violence…or involves a…firearm…". The Fifth Circuit has not had occasion to decide whether the charged offense in this case, receiving a firearm while under indictment for a felony, is a crime of violence under the Bail Reform Act. Nor has the Fifth Circuit decided whether felon in possession of a firearm is a crime of violence under the Bail Reform Act, and the circuits are split. The Seventh Circuit concluded that felon in possession of a firearm is not a

---

[30] *United States v. Green*, 793 F. App'x 223, 226 (5th Cir. 2019).
[31] *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).
[32] *Id*.

crime of violence in *United States v. Lane*.[33] The *Lane* court distinguished a Second Circuit case, *United States v. Dillard*,[34] which held the opposite:

> [I]t can be argued that while most *felonies* (even after antitrust and related offenses are netted out) are nonviolent, most *felons* are dangerous when armed. The largest class of felons nowadays are dealers in illegal drugs, a violence-prone business. The Second Circuit in *Dillard* asked whether felons do a lot of violence with the weapons they possess illegally, and answered 'yes,' leading to the conclusion that the risk of violence created by being a felon in possession of a firearm is substantial. But the statute asks whether there is a 'substantial risk that physical force against the person or property of another may be used *in the course of committing the offense*,' and the offense is possession of a firearm. People who commit that offense may end up committing another, and violent, offense, such as robbing a bank at gunpoint, but that doesn't make the possession offense violent. Otherwise, we would have to say that the offense of driving a car without a license is a crime of violence because people who commit that offense are likely to drive when drunk, or to speed, or drive recklessly, or attempt to evade arrest. For that matter, the illegal sale of a gun, or perhaps of a knife or burglar tools, would on that analysis be a crime of violence. A crime that increases the likelihood of a crime of violence need not itself be a crime of violence. *Bailey v. United States*[35] is suggestive. The Supreme Court distinguished simple possession of a weapon from use in the sense of active use, limiting the statutory term "use" to the active variety. The active use of a gun is a crime of violence in a way that mere possession of it, even if criminal, is not. *Dillard* bespeaks a pre-*Bailey* understanding of possession and use as being essentially identical crimes.[36]

The Court finds the *Lane* court's analysis persuasive. Therefore, the Court holds that receiving a firearm while under indictment for a felony is not a violent crime under the Bail Reform Act. Fields is charged with a status crime. The offense charged does involve a firearm, however, which § 3142(g)(1) directs the Court to consider. The Court finds that a status crime such as this, without more, weighs in favor of pretrial release.[37]

---

[33] 252 F.3d 905 (7th Cir. 2001).
[34] *United States v. Dillard*, 214 F.3d 88 (2d Cir. 2000).
[35] 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).
[36] 252 F.3d 905, 907–08 (7th Cir. 2001) (emphasis in original).
[37] The crime charged in the predicate bill of information is cause for concern, but that is considered in later parts of the analysis.

### 2.  The Weight of the Evidence Against Fields

18 U.S.C. § 3142(g)(2) directs the Court to consider the weight of the evidence against the person. Because the Court granted the *Motion to Suppress*, the only evidence before the Court that could be indicative of guilt is a social media video and an image, offered into evidence by the Government. Both appear to show Fields possessing firearms.

The video[38] begins with Fields dancing and lip-syncing at the camera. Next, he lifts what appears to be an AR-15 style firearm from off camera and continues dancing and lip-syncing while pointing the firearm at the camera. He then places the firearm in his pants and continues lip-syncing at the camera and dancing. The video ends with Fields, equipped with social media "filters" of animated rosy cheeks and horns, speaking directly into the camera while showing off his clothing.

The still image[39] depicts Fields wearing a red bow in his hair while holding another AR-15 style firearm by the pistol grip and draping the upper assembly and barrel over his shoulder. He appears to be smoking something and has what appears to be another firearm tucked into his pants.

The social media evidence is indicative of guilt only if the Court makes two assumptions. First, the Court would have to assume that the firearms were transported in interstate commerce.[40] Second, the Court would have to assume that the firearms were in fact firearms, as opposed to replicas or toys. Therefore, the evidence before the Court is weak. This factor weighs in favor of pretrial release.

---

[38] Government's Exhibit 9.
[39] Government's Exhibit 18.
[40] 18 U.S.C. 922(n).

3.  <u>Fields' History and Characteristics</u>

Turning to Fields' history and characteristics, Fields admits that the factors are "mixed in terms of the decision to detain or release [Fields]"—and they are. As Fields argues, he has never been convicted of a crime. However, Fields' criminal history report, introduced by the Government at the August 17 hearing, indicates several troubling arrests and pending charges. These alleged crimes include two drug crimes compounded by possession of a firearm, another drug crime, aggravated flight from an officer by vehicle, second degree attempted murder, and several traffic violations. Notably, all of these arrests occurred between July 2017 and September 2020. The Government documents several missed court appearances, notes that Fields was on release pending trial when the instant offense allegedly occurred, and details Fields' continued disregard for the law while detained pending trial.

The parties place heightened emphasis on the second-degree attempted murder charge, which, according to the defense,[41] has been dropped to aggravated assault. The parties focus on this charge because, as noted above, Fields has produced the affidavit of a juvenile who takes responsibility as the shooter. The Government submitted an East Baton Rouge Sheriff's Office report that details a call that Fields made from prison. During that call, Fields directed a third person to contact the juvenile and ask the juvenile to take responsibility for the shooting before the juvenile turns seventeen years old. The juvenile's affidavit contradicts his witness statement made to officers after the shooting in that after the shooting, he claimed Fields was the shooter, but in his affidavit, he claimed he was

---

[41] Defense counsel asserted that the charge has been dropped to aggravated assault at argument. This assertion was not substantiated by record evidence.

the shooter. The Government characterizes this as witness tampering, while Fields appears content to rest on the contents of the affidavit.

The Court struggles to draw any concrete inferences from the affidavit. On the one hand, Fields' jailhouse call could be characterized as witness tampering since he indirectly asked a witness to change his story. But on the other hand, if one assumes the veracity of the affidavit, then Fields' jailhouse call is merely him attempting to clear his name. Similarly, while the juvenile changed his story, if the affidavit is believed, then the juvenile had every reason to lie to the police after the shooting. In sum, while the affiant's motivation and Fields' conduct in helping procure the affidavit may be called into question, the existence and contents of the affidavit cannot. Simply put, someone else has confessed, under oath, to the most serious crime that Fields has been accused of. This fact prevents the Court from giving weight to Fields' attempted murder charge because the Court cannot conclude with any degree of certainty that Fields committed the conduct giving rise to the charge.

The Court is hesitant to attach undue weight to Fields' prior arrests and pending charges because has he has not been convicted of those alleged crimes. However, the Court notes that there is a pattern of relatively frequent arrests for drug and firearm offenses. Similarly, the aggravated flight from an officer charge could be indicative of a disregard for the law and law enforcement. The Court finds that Fields has a demonstrated a propensity to be arrested for and charged with crimes involving drugs and firearms, such that this propensity is part of his overall "history and characteristics."

Fields' demonstrated record of missing court appearances is troubling. Fields defends his appearance record with the assertion that "he ultimately has always shown

up."[42] According to the East Baton Rouge Sheriff's Office report related to the attempted murder, Fields called detectives to arrange for his own surrender once he learned of the arrest warrant. This offsets some of the force that his prior nonappearances exert on the Court's analysis of his future risk of nonappearance.

Finally, the Government points to Fields' alleged possession of cellphones while in prison in violation of West Baton Rouge Parish Prison rules as evidence of his character. If true, Fields' possession of cell phones in prison is indicative of a disregard for the law but is not directly probative of his risk of nonappearance or potential danger to the community.[43]

4. The Nature and Seriousness of the Danger Posed to the Community if Fields is Released

The multi-factor test prescribed by 18 U.S.C. § 3142(g) is subsumed into the ultimate question, which is: has the Government shown by clear and convincing evidence that there is no condition nor combination of conditions that can reasonably assure the safety of any other individual or the community? The Court concludes the Government has not met its burden for several reasons.

First, none of Fields' arrests, with the exception of the attempted murder, involved crimes of violence against people. To be sure, Fields' alleged distribution of illicit narcotics, if true, is a scourge to the community, but the potential for that danger can be largely curtailed with location monitoring and adequate supervision. Moreover, Fields has never been convicted of a drug or firearm crime, which makes it inappropriate to assume that if released, he would endanger the community directly by selling drugs, or abstractly

---

[42] Rec. Doc. No. 66-1, p. 10.
[43] Notably, the Government charged Fields by Bill of Information with possession of a prohibited object.

by possessing them. As to the aggravated flight from an officer charge, that charge is indicative of significant risk to the community in that Fields' alleged flight by vehicle could have injured a bystander. But once again, a condition such as location monitoring ameliorates the risk. The affidavit confession of the juvenile to the attempted murder undermines the argument that the risk that Fields poses to the community cannot be moderated by conditions.

Furthermore, the social media image and video offered by the Government[44] are weak evidence of the instant offense. As to the broader potential danger to the community they indicate, the Court finds that that danger is negligible. Neither piece of evidence depicts Fields brandishing the weapons in a threatening manner. To be sure, during the video he points the gun at the camera, but given the cameraman's lack of a reaction, the cameraman clearly did not feel threatened. Additionally, the Court cannot determine from the video and image if the firearms are loaded or even real, and the Government introduced no evidence on that point.

Finally, the allegations that Fields has illegally possessed a cell phone on two occasions while in prison is hardly probative of his potential danger to the community. The Government argues that it is evidence of Fields inability to conform to the rules and while that is theoretically true, the jailhouse use of a cellphone is not evidence of a threat to society.

The § 3142(g) inquiry is at core a risk assessment based on the defendant's prior conduct and characteristics. The court must balance the defendant's limited right to bail pending trial against an array of speculative possibilities. In this case, the Court must

---

[44] See footnotes 39, 40, *supra*.

balance speculations on both sides of the scale since Fields has not been adjudicated guilty of any crimes. The Court is aided by the recommendation of the United States Probation and Pretrial Services who specialize in this type of risk assessment. Notably, in this case Probation and Pretrial Services recommended release pending trial with conditions.

The Court must also apply the law as written. The Government bears a heavy burden to establish, by clear and convincing evidence, that there are no conditions or combinations of conditions that will *reasonably assure* the safety of the community. During the August 17 hearing, the Government made little effort to explain why the conditions that Probation and Pretrial Services recommended would not reasonably assure the safety of the community. This deficiency is compounded by the fact that Fields has never been convicted of a crime, and thus has never been adjudicated to be a danger to the community. The "danger to the community" calculus is necessarily imprecise, but based on the available evidence, the Court concludes that the Government has not met its burden of establishing by clear and convincing evidence that there are no conditions or combination of conditions that will reasonably assure the safety of the community or any other individual.

    5.  <u>Risk of Nonappearance</u>

The Government also argues that there are no conditions or combinations that will reasonably assure Fields' appearance. The Government must show this by a preponderance of the evidence. Fields has a record of nonappearance, as discussed above. However, Probation and Pretrial Services concluded that there is a combination of conditions that would reasonably assure his appearance. Additionally, Probation and

Pretrial Services noted that Fields is a lifelong resident of the community, has no passport, and would remain in the community if released pending trial.

Moreover, Fields has identified a relative that he could reside with. Both the relative and her husband are gainfully employed, and Fields asserts that due to their differing work schedules, one or the other would always be home to supervise him. Based on the evidence before the Court, the Government has failed to demonstrate by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure Fields' appearance as required.

## III.    CONCLUSION

For the reasons set forth above, Fields's *Motion for District Court to Review the Order Denying Defendant's Motion to Revisit and Amend Detention Ruling*[45] is GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>August 31, 2021</u>.

_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[45] Rec. Doc. No. 66.